U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 4 2014

CLERK, U.S. DISTRICT COURT
By _____
              Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALVERNIA T. MILLS,                    §
                                      §
              Plaintiff,              §
                                      §
VS.                                   §   NO. 4:13-CV-352-A
                                      §
JEH JOHNSON, SECRETARY,               §
UNITED STATES DEPARTMENT OF           §
HOMELAND SECURITY,                    §
                                      §
              Defendant.              §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion for summary judgment, as supplemented, of defendant, Jeh Johnson,[1] Secretary, United States Department of Homeland Security ("Secretary"). After having considered such motion, the supplement thereto, supporting briefs and appendices, the opposition of plaintiff, Alvernia T. Mills, to such motion, the brief and appendix filed in support of the opposition, the entire summary judgment record, and pertinent legal authorities, the court has concluded that such motion should be granted and that plaintiff's remaining claims should be dismissed.

---

[1]When this action was filed, Janet Napolitano was serving as Secretary of the Department of Homeland Security. Jeh Johnson entered office as her replacement on December 23, 2013. Therefore, he automatically was substituted as the defendant in place of Janet Napolitano. See Fed. R. Civ. P. 25(d).

I.

## Background and Nature of Plaintiff's Claims

This action was initiated on April 30, 2013, by the filing by plaintiff of her complaint, naming as defendants the United States of America, United States Department of Homeland Security ("DHS"), Federal Protective Service ("FPS"), Janet Napolitano, Secretary of DHS, Gilbert N. Russo ("Russo"), and Sherina R. Hughes ("Hughes"). Plaintiff alleged claims for (1) retaliation, in violation of Title VII of the Civil Rights Act of 1964, (2) violations of the Rehabilitation Act of 1973, and (3) violations of the Health Insurance Portability and Accountability Act ("HIPAA"), all related to her employment by DHS. In response to a motion to dismiss filed by DHS, FPS, Russo, and Hughes, the court, by order signed July 3, 2013, dismissed all claims asserted by plaintiff against DHS, FPS, Russo, and Hughes, and the claims asserted against Secretary under HIPAA.

After those dismissals, Secretary was the only remaining defendant, and the only remaining claims were claims asserted in Counts 1, 2, and 3 of the complaint under Title VII and the

Rehabilitation Act.[2]  Secretary's motion for summary judgment is directed to all of those claims.

With leave of court, plaintiff filed an amended complaint on March 5, 2014.  Other than to take into account the dismissals the court accomplished by the July 3, 2013 order, the allegations of the amended complaint did not significantly change the nature of plaintiff's claims.  Plaintiff alleged in her Count One that Secretary violated Title VII of the Civil Rights Act of 1964 by retaliating against her.  In her Count Two, she alleged that Secretary violated the Rehabilitation Act of 1973.  By Count Three, plaintiff alleged that Secretary violated the Rehabilitation Act's confidentiality provisions.  The court allowed Secretary to supplement its motion for summary judgment to take into account whatever new allegations were made in the amended complaint.

---

[2]Implicit in the July 3, 2013 rulings was the court's conclusion that United States of America was not a proper defendant.  In the amended complaint plaintiff filed March 5, 2014, she did not name United States of America as a defendant, but named Jeh C. Johnson, Secretary of the Department of Homeland Security, as the only defendant.

II.

## Undisputed Evidence

The following is an overview of evidence pertinent to the
motion for summary judgment that is undisputed in the summary
judgment record:

Plaintiff was an employee of FPS, a component of DHS.  She
was a mission support specialist, with the responsibility for
matters such as property management and inventory.  Her principal
supervisor was Hughes.  The regional director over Hughes was
Russo.

Plaintiff, following an extended leave of absence, returned
to work on February 9, 2010, with a note from her physician
informing FPS that she was medically cleared to work with no
restriction.  On February 17, 2010, Hughes gave plaintiff a copy
of plaintiff's performance plan for the 2010 fiscal year.  Like
her performance plans for earlier years, the one she was given in
February 2010 included a description of team leader duties.  For
at least two years before she took her leave of absence, one of
plaintiff's duties was to serve in a team leader role with
respect to certain property management work.

On February 22, 2010, plaintiff returned her performance
plan to Hughes with a note saying that "at this time" she was
unable to perform the team leader duties "[d]ue to health

4

issues." Mot., App. at 85. Plaintiff did not submit any medical documentation in support of her statement that she was unable to perform the team leader duties due to health issues.

Hughes contacted the employee relations consultant within DHS for guidance as to how to proceed in reference to plaintiff. The consultant prepared a letter to be provided to plaintiff, requesting information about her medical restrictions and what accommodations might be needed. Hughes presented the letter to plaintiff on March 8, 2010. The letter requested plaintiff's physician to provide specific information that related to plaintiff's statement that she was unable to serve as the team leader due to health issues. The letter requested a response by March 29, 2010.

The March 29, 2010 deadline was not met, but on April 6, 2010, plaintiff gave Hughes a note, dated the previous day, from plaintiff's physician, who was the one who two months earlier had said that plaintiff could work with no restrictions. The new note said that plaintiff had been under the physician's care since June 2009, and that "[a]t the present time she is suffering from Severe Depression and Generalized Anxiety Disorder" and that "[s]he is being advised not to take additional responsibilities other than her necessary job duties." Mot., App. at 97.

The note from the physician was not responsive to the requests for information made in the March 8, 2010 letter.  There was no indication in the note as to what specific job duties plaintiff could or could not perform, nor was there any indication as to whether any accommodation was necessary.  Thus, Hughes again sought guidance from the DHS employee relations consultant, Janice Haskins ("Haskins"), who also found the physician's new note puzzling.  As Haskins explained during her deposition:

> It does not provide any information on what she could or could not do.  It also did not provide anything or any accommodations that she would need to do her job.

Mot., App. at 194.

Haskins directed Hughes to provide a second letter to plaintiff, again requesting information and clarification about plaintiff's medical condition.  Hughes provided the second letter to plaintiff on April 8, 2010.  It again asked plaintiff to have her physician provide certain information about plaintiff's ability to perform her job duties.  That request was withdrawn by Hughes after plaintiff's union representative requested that the agency, instead, pay for an examination and report.

Next, rather than to further request medical information from plaintiff directly, Haskins prepared a new letter requesting plaintiff to undergo a fitness-for-duty examination, to be paid

6

for by DHS, thus eliminating any concern by plaintiff or her
union representative that plaintiff might have to advance out-of-
pocket costs to obtain the required medical documentation.
Haskins also had in mind when she suggested the medical
examination that it would cause the information DHS needed to be
provided more expeditiously.  The letter requesting the
examination was given by Hughes to plaintiff on April 20, 2010;
however, plaintiff did not undergo a fitness-for-duty examination
at that, or any other, time.

Plaintiff was never disciplined or otherwise subjected to
adverse treatment as a result of not undergoing the requested
examination or on account of the non-responsiveness of plaintiff
and her physician to DHS's earlier requests for medical
documentation.  After plaintiff initially stated in February 2010
that a medical issue prevented her from performing team leader
duties, Hughes did not require plaintiff to perform those duties
during the time the agency was requesting medical documentation
or a fitness-for-duty examination, or at any time thereafter.
Plaintiff was not subjected to any discipline for not performing
her team leader duties.

During the period of time when plaintiff was in contact with
Hughes about medical issues, she was talking separately to the
agency's overall regional director, Russo, in an attempt to

7

obtain a temporary transfer from under Hughes's supervision.
This started in February 2010, about the same time when plaintiff
was informing Hughes that she could not perform certain of her
job duties. That is when plaintiff emailed Russo requesting a
temporary transfer within the agency, indicating to Russo that
she wanted to be "removed from under the supervision of Ms.
Hughes" as the two "did not work well together." Mot., App. at
115; 89; 93.

Initially, Russo replied to plaintiff that no temporary
transfer of position was available and that plaintiff was needed
in her current position. However, Russo invited plaintiff to
meet personally with him to discuss the matter. A few days
later, on March 2, 2010, they had such a meeting during which
Russo offered plaintiff a temporary transfer to serve in a
Contracting Officer's Technical Representative ("COTR") position.
Plaintiff told Russo that she accepted the position, and she left
the meeting. Later that day she wrote to Russo that she would
instead decline the temporary transfer to the COTR position.
That position was the only vacant, funded position available at
the time.

On April 27, 2010, plaintiff sent an email to Hughes
requesting an unpaid leave of absence without further notice due
to stress. After consulting with Haskins, Hughes approved that

request in a letter sent to plaintiff the following day.
Consistent with the agency's practice with respect to similar
leave requests from other employees, Hughes informed plaintiff
that the approval of the leave-without-pay was contingent on the
submission of supporting medical documentation. After Hughes
finally received the requested documentation from plaintiff, she
informed plaintiff by letter on May 20, 2010, that the requested
leave-without-pay was fully approved. Plaintiff took an extended
leave of absence from the workplace, from April 27, 2010 into
June 2010.

In May 2010, plaintiff, represented by an attorney, filed a
formal administrative complaint of discrimination based on the
agency's medical inquiries and handling of plaintiff's requests
for temporary transfer and leave-without-pay. The agency's Equal
Employment Opportunity ("EEO") office accepted three of
plaintiff's claims for investigation--(1) plaintiff's complaint
that on March 1, 2010, the Regional Director advised plaintiff
that she could not be transferred as she had requested on
February 26, 2010; (2) her complaint that on April 20, 2010, the
agency requested plaintiff to take a fitness-for-duty medical
examination; and (3) her complaint that on April 28, 2010, her
request for leave-without-pay was only conditionally approved.

She had asserted two other claims to the EEO office.
Plaintiff was informed by the August 10, 2010 notice from the EEO
office that those claims were dismissed.  The dismissed claims
were (1) that on March 8, 2010, she had been requested to provide
medical documentation in support of her assertion that she could
not serve as a team leader, and (2) that on April 8, 2010, she
had been requested to provide medical documentation in support of
her assertion that she could not serve as a team leader, a
request that was rescinded on April 9, 2010.

An administrative law judge issued a partial summary
decision denying plaintiff's claim related to her request for a
temporary transfer; and, the administrative law judge conducted
an evidentiary hearing on the remaining two claims that had been
accepted for investigation.  Following the hearing, the judge
issued a decision denying the remaining claims--the claim related
to the agency's request for a fitness-for-duty examination and
the claim related to plaintiff's request for leave-without-pay.
The denial decision informed plaintiff that she had the right to
appeal to the Equal Employment Opportunity Commission's Office of
Federal Operations within thirty days of any final order
implementing the decision.

After the final action notice allowing the administrative
law judge's decision to stand, plaintiff appealed to the EEOC's

10

Office of Federal Operations, asking for a review of the denial

of her claims relating to the fitness-for-duty examination and

her request for temporary transfer and leave-without-pay.  She

did not appeal the dismissal of her claims related to the

March 8, 2010 and April 8, 2010 requests for documentation.  When

180 days passed without the issuance by the EEOC's Office of

Federal Operations of a final decision, plaintiff filed the

instant action.

### III.

#### Analysis

A.   Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides

that the court shall grant summary judgment on a claim or defense

if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  The movant bears the initial burden of pointing out to

the court that there is no genuine dispute as to any material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

The movant can discharge this burden by pointing out the absence

of evidence supporting one or more essential elements of the

nonmoving party's claim, "since a complete failure of proof

11

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).[3]

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Boeing Co. v. Shipman, 411

---

[3]In her response to the motion for summary judgment, plaintiff relies on a summary judgment standard that appears to disregard the 1986 opinions of the Supreme Court in Anderson, Celotex Corp., and Matsushita Elec. Indus. Co. See Pl.'s Resp. at 3, ¶ A.

F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the
standard to be applied in determining whether the court should
enter judgment on motions for directed verdict or for judgment
notwithstanding the verdict).

B.   The Rehabilitation Claims

By Counts Two and Three of her complaint, as amended,
plaintiff alleged violations of the Rehabilitation Act of 1973,
which applies to any claim of employment-related disability
discrimination brought by a federal employee, and incorporates
substantive standards of the Americans With Disabilities Act.
See 29 U.S.C. §§ 791(g), 794(d); Dark v. Potter, 293 F. App'x
254, 258 (5th Cir. 2008).   Plaintiff's Rehabilitation Act claims
are in two general categories.   The first category is found in
the allegations in Count Two, which complains that the agency
made medical inquiries and sought medical documentation from her
after she stated in February 2010 that her health condition
prevented her from performing team leader duties.   The second,
which is set forth in Count Three, asserts a violation of the
confidentiality provisions of the Rehabilitation Act.

1.   The Count Two Claims

Plaintiff's Count Two seems to be a complaint that
Secretary, through Hughes, violated section 501 of the
Rehabilitation Act by making inquiries of her physician relative

13

to her job performance limitations and by making the later-withdrawn request for medical examination.  While her Count Two allegations are not a model of clarity, they seem to be summed up in the final paragraph of the count as follows:

> The fitness for duty letter violated the Rehabilitation Act because the Agency had no "objective evidence" to request the Plaintiff to undergo a Fitness for Duty Exam because it was not job-related or consistent with business necessity as a Mission Support Specialist.  The Plaintiff's capacity to perform the "Essential functions" as a Mission Support Specialist, Property Custodian were not jeopardized or impaired. The Plaintiff was reassigned the largest Property Custodian responsibility and she performed these duties as assigned.

Am. Compl. at 10-11, ¶ 47 (emphasis in original).  In his motion, Secretary correctly points out that plaintiff did not exhaust her administrative remedies as to her complaints about the letters seeking information concerning her fitness for duty.  Plaintiff was informed by the August 10, 2010 notification letter of the dismissal of those complaints and of her rights to further pursue the claims administratively.  When plaintiff filed her appeal with the EEOC's Office of Federal Operations, she did not challenge those dismissals or urge reinstatement of those claims. Consequently, those claims have been abandoned, and they cannot be pursued in this court.  See French v. Henderson, 4 F. App'x 257, 258 (6th Cir. 2001).

14

Even if those claims had been administratively exhausted, they would not survive Secretary's summary judgment motion. Similarly, the complaint about the withdrawn request that plaintiff undergo a fitness-for-duty exam is without legal merit. An employer is expressly authorized to "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. §§ 12112(d)(4)(B). The agency's medical inquiries and requests for medical information were proper. Once plaintiff told the agency that she was unable to perform an aspect of her job due to a medical condition, the agency was authorized to make inquiries into the her ability to do her job. See id.; see also Ketcher v. Wal-Mart Stores, Inc., 122 F. Supp. 2d 747, 754 (S.D. Tex. 2000).

The agency's requests for medical information were brought about by plaintiff's own assertions about an alleged medical condition affecting her ability to perform certain job duties, and were all appropriately job related. Plaintiff has failed to raise any issue of material fact as to Secretary's requests for medical documentation and verification. Therefore, summary judgment would be appropriate related to all of those claims even if they all had been administratively exhausted.

Secretary gives additional reasons why plaintiff's Count Two claims fail, but the court does not need to devote attention to

15

those further reasons in this opinion inasmuch as Secretary is clearly entitled to summary judgment as to the Count Two claims for the reasons discussed above.

The only additional matter related to the Count Two claims the court thinks appropriate to discuss in this subsection of the opinion is the contention of plaintiff in her brief in opposition that before she took the leave of absence that terminated in February 2010 she did not have team leader duties, and that the performance plan she received from Hughes on February 17, 2010, containing a team leader role added new duties, with the result that the Secretary had no right to make inquiry relative to plaintiff's abilities to perform those duties. Plaintiff seems to pitch her argument on the basis of what her job description said rather than a recognition of what her actual job assignments had been. The summary judgment record establishes conclusively, and without genuine dispute, that her actual job assignments for about two years before she took her leave of absence included team leader duties. See Mot., App. at 134, ¶ 5; 162 (Admission No. 22); 169.

The fact that a job description might not have included team leader duties is not relevant if, in fact, her job assignments included team leader duties. In addition to making an unqualified admission, in response to a Rule 36 request for

16

admission, that prior to February 17, 2010, she performed team

leader duties,[4] she gave the following testimony on that subject

at the December 8, 2011 EEOC hearing:

> Q.   Now, on February 17th, just about a week or
> so after you gave Ms. Mills -- Ms. Hughes -- excuse me
> -- that note, she provided you with your performance
> plan for the fiscal year; is that correct?
>
> A.   That's correct.
>
> Q.   In that performance plan, it included a
> description of the team leader duties that you were
> responsible for performing, correct?
>
> A.   That is correct.
>
> Q.   And you returned that stating that you were
> unable to perform -- to serve as the team leader for
> the property management team due to health issues.
> "I'm not ready to take on additional responsibilities
> as the lead."
>
> Correct?
>
> A.   That is correct.
>
> Q.   Now, the team leader duties weren't new or
> additional duties, were they?  Those were duties that
> you had been performing in the past?
>
> A.   For two years, yes, ma'am.
>
> Q.   And, in fact, your performance work plan
> during those prior years mentions those team leader
> duties, didn't they?
>
> A.   They did.

---

[4]Rule 36(b) provides that a matter admitted under that Rule "is conclusively established unless
the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

> Q.   They described what the duties were, correct?
>
> A.   I suppose so, yes.

Mot., App. at 168-69.

Thus, the record conclusively establishes that the team leader role was an integral part of plaintiff's job duties.

### 2.   The Count Three Claim

Plaintiff's Count Three claim contends that the Secretary's requests for information concerning her medical condition violated the Rehabilitation Act's confidentiality provisions. While the allegations of Count Three are virtually incoherent, the court is satisfied that whatever claim plaintiff might be making in reference to breach of confidentiality by reason of the letters to her physician inquiring about her job performance abilities are without factual support in the summary judgment record or any legal basis.

Therefore, the court has concluded that Secretary is entitled to summary judgment as to Count Three.

### C.   The Title VII Retaliation Claim

Plaintiff complains in her Count One that Secretary "discriminated against [plaintiff] with respect to the terms, conditions, and privileges of her employment on the basis of Retaliation in violation of Title VII of the Civil Rights Act of 1964." Am. Compl. at 9, ¶ 42. She went on in her complaint to

18

explain that the predicate of her retaliation claim was that "[t]he team leader duties were outside Plaintiff's job description." Id. As the court previously has discussed, the fact that a job description did not include the team leader duties plaintiff actually had for about two years before she went on her extended leave of absence that ended February 9, 2010, has no relevance to any legitimate issue in this action. The statement in the final paragraph of Count One that "Defendants retaliated against Plaintiff for her participation in prior protected activities and assisting in an EEOC investigation for a co-worker," Am. Compl. at 9, ¶ 44, appears to be an off-the-wall assertion that is without support in the summary judgment record.

        Therefore, Secretary is entitled to summary judgment as to plaintiff's Count One.

D.    Conclusion

        For the reasons discussed above, the court has concluded that Secretary's motion for summary judgment should be granted. Not only has plaintiff failed to adduce any summary judgment evidence that would raise a genuine issue of fact as to each element of any cause of action she purports to assert, the summary judgment evidence affirmatively establishes that Secretary was extremely patient with plaintiff, and appears to have attempted to give plaintiff the benefit of every doubt.

                                    19

IV.

Order

Therefore,

The court ORDERS that Secretary's motion for summary judgment be, and is hereby, granted.

The court further ORDERS that all claims and causes of action asserted by plaintiff that have not already been dismissed be, and are hereby, dismissed with prejudice.

SIGNED March 24, 2014.

_____

JOHN McBRYDE
United States District Judge

20